J-A24002-13

2015 PA Super 26

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL R. VEON | |
| Appellant | No. 1698 MDA 2012 |

Appeal from the Judgment of Sentence November 8, 2012
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004274-2009

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL R. VEON | |
| Appellant | No. 2168 MDA 2012 |

Appeal from the Order Entered November 8, 2012
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004274-2009

BEFORE:  PANELLA, J., MUNDY, J., PLATT, J.[*]

OPINION BY PANELLA, J.                    **FILED FEBRUARY 06, 2015**

        This is the latest in a string of cases involving corrupt political officials.

We consider, among other things, a challenge that Section 1103(a) of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Public Official and Employee Ethics Act is unconstitutionally vague, both as applied and facially, and overbroad. As explained in detail below, we quash the appeal at 2168 MDA 2012 and affirm the convictions and the order of restitution at some counts, but vacate and remand for further proceedings on other counts.

At all relevant times, Appellant, Michael R. Veon, was the sitting representative for the 14th Legislative District for the Pennsylvania House of Representatives, located in Beaver County, Pennsylvania. Veon was also the minority whip, the second most powerful position in the House Democratic Committee.

In 1991, Veon formed the Beaver Initiative for Growth ("BIG"), a non-profit corporation. BIG did not have a Board of Directors, but instead featured two "co-chairs," Veon and Pennsylvania State Senator Gerald J. LaValle. BIG was funded exclusively through public monies, primarily through grants from the Pennsylvania Department of Community and Economic Development ("DCED"). Eventually, BIG leased office space in Beaver Falls, Midland, and in Pittsburgh. BIG then sublet large portions of those offices to Veon's legislative offices, or, in the case of Pittsburgh, allowed a research analyst for the House Democratic Committee to utilize the property.

On May 27, 2009, the Commonwealth filed charges against Veon and his legislative aide, Anna Marie Peretta-Rosepink, alleging that they had

executed a scheme that misappropriated public funds awarded to BIG. Veon and Peretta-Rosepink were tried before the same jury, and on March 5, 2012, the jury found Veon guilty on the following charges:

- 1 count of violating 65 Pa.C.S.A. § 1103(a) (conflict of interest;

- 2 counts of violating 18 Pa.C.S.A. § 3921(a) (theft by unlawful taking);

- 2 counts of violating 18 Pa.C.S.A. § 3922(a)(1) (theft by deception);

- 2 counts of violating 18 Pa.C.S.A. § 3927(a) (theft by failure to make required disposition of funds);

- 2 counts of violating 18 Pa.C.S.A. § 4113(a) (misapplication of entrusted property); and

- 1 count of violating 18 Pa.C.S.A. § 903 (criminal conspiracy).

The trial court subsequently sentenced Veon to an aggregate sentence of not less than 12 nor more than 48 months' imprisonment, to be followed by 48 months of intermediate punishment, and ordered Veon to pay the amount of $119,000.00 in restitution to the Commonwealth of Pennsylvania.

Veon filed post-sentence motions, which the trial court granted in part and denied in part. The trial court granted Veon's request for a hearing on restitution. The trial court held the hearing and entered an order on November 8, 2012, fixing restitution at $135,615.00. This timely appeal followed.

On appeal, Veon raises the following issues:

I. Whether the Pennsylvania Conflict of Interest Law is unconstitutionally vague on its face, and whether the trial

court improperly expanded the definition of, and as applied in this case, "private pecuniary interest" to include intangible political gain, thereby threatening the constitutional rights of all elected officials in Pennsylvania.

II. Whether the trial court improperly permitted the Commonwealth to amend the criminal information after the close of the Commonwealth's case, thereby prejudicing [Veon].

   a. Whether the trial court improperly permitted the amendment of the information to change "utilize" to "staff" related to the South Side Office;

   b. Whether the trial court improperly permitted the *de facto* amendment to the information by submitting an improper verdict slip to the jury, and by improperly answering the jury's question, and by permitting the jury to decide which district office was the subject of the information[.]

III. Whether the [trial] court erred in ordering restitution in this case in any amount, and whether the amount entered was otherwise improper.

   a. Whether the amount of restitution was rationally related to the verdict;

   b. Whether restitution was improper because it was speculative, since the [trial] court could not know what legislative offices were represented by the verdict;

   c. Whether the restitution order was excessive because the non-profit benefitted from the use of the rented space;

   d. Whether the restitution order was improper because the Commonwealth cannot be a victim under the subject criminal statutes.

IV. Whether the verdict is improper because the Commonwealth cannot be a victim under the subject criminal statutes.

V. Whether the Commonwealth improperly destroyed witness interview notes in violation of … [Veon]'s constitutional rights, and in violation of the Pennsylvania Rules of Criminal Procedure and the Pennsylvania Rules of Professional Conduct, thereby depriving the [Appellant] of a fair trial.

> VI. Whether the evidence adduced at trial was insufficient as a matter of law to convict … [Veon] of the charges for which he was found guilty.

Appellant's Brief at 6-7.

Before we address the issues raised on appeal, we begin with two preliminary matters. First, the trial court maintains that Veon has waived all of his issues on appeal by failing to file a timely statement of matters complained of on appeal pursuant to Rule 1925(b) of our Rules of Appellate Procedure. Waiver is no longer the remedy under such situations. Where the trial court does not address the issues raised in an untimely 1925(b) statement, we remand to allow the trial court an opportunity to do so. *See* ***Commonwealth v. Thompson***, 39 A.3d 335, 340 (Pa. Super. 2012). On the other hand, where, as here, the trial court has addressed the issues raised in an untimely Rule 1925(b) statement, we need not remand and may address the issues on their merits. *See id*.

Second, as a cautionary move, Veon appealed from both the judgment of sentence and from the order amending the amount of restitution. An award of restitution is a sentence. *See* ***Commonwealth v. Kinnan***, 71 A.3d 983, 986 (Pa. Super. 2013). Here, restitution was imposed as a direct sentence. *See* 18 Pa.C.S.A. § 1106(a).

"[A] direct appeal in a criminal case can only lie from the judgment of sentence." ***Commonwealth v. Lawrence***, 99 A.3d 116, 117 n.1 (Pa. Super. 2014). The November 8, 2012 order only amended the judgment of sentence of restitution. Accordingly, we quash the appeal at 2168 MDA

2012. We have amended the caption of the appeal at 1698 MDA 2012 to reflect the correct date for the amended judgment of sentence. We proceed to the issues raised on appeal.

The statute at issue is Section 1103 of the Public Official and Employee Ethics Act entitled, Restricted Activities. Specifically, subsection (a), which case law refers to as the conflict of interest statute. *See* 65 Pa.C.S.A. § 1103(a) **Conflict of interest**. Veon argues that this statute is void for unconstitutional vagueness and overbreadth. We disagree.

We presume that acts passed by the General Assembly are constitutional. *See Lawrence*, 116 A.3d at 118. "[A] statute will not be found unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality." *Id*. (citation omitted). The constitutionality of a statute presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *See id*.

We begin with Veon's claim that the statute is unconstitutionally vague. In order to avoid due process concerns, a statute must not be vague. *See Commonwealth v. Habay*, 934 A.2d 732, 737 (Pa. Super. 2007). "The due process standards of the Federal and Pennsylvania Constitutions are identical." *Commonwealth v. Scott*, 878 A.2d 874, 878 n.4 (Pa. Super. 2005) (citations omitted). The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient

- 6 -

definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." **Commonwealth v. Duda**, 923 A.2d 1138, 1147 (Pa. 2007) (citations omitted). Thus, "a penal statute must set forth a crime with sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. The law must provide reasonable standards which people can use to gauge the legality of their contemplated, future behavior." **Habay**, 934 A.2d at 737 (citations omitted). This specificity requirement does not require a statute to "detail criminal conduct with utter precision," as these competing principles are "rooted in a rough idea of fairness." **Id**. (citations omitted). Accordingly, "statutes may be general enough to embrace a range of human conduct as long as they speak fair warning about what behavior is unlawful." **Id**. (citations omitted).

We also note that there are two types of vagueness challenges, both of which Veon asserts in this appeal: facial vagueness and vagueness as applied.

> First, a challenge of facial vagueness asserts that the statute in question is vague when measured against any conduct which the statute arguably embraces. Second, a claim that a statute is vague as applied contends the law is vague with regard to the particular conduct of the individual challenging the statute.
>
> For a court to entertain challenges of facial vagueness, the claims must involve First Amendment issues. When a case does not implicate First Amendment matters, vagueness challenges are to be evaluated in light of the facts at hand—that is, the statute is to be reviewed as applied to the defendant's particular conduct.

*Id*., at 738 (internal citations omitted).

The conflict of interest statute states, "[n]o public official or public employee shall engage in conduct that constitutes a conflict of interest." 65 Pa.C.S.A. § 1103(a). The statute defines "conflict of interest" as:

> Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated.

65 Pa.C.S.A. § 1102. **Definitions**.

Veon first claims the statute is vague on its face as it fails to define the conduct prohibited. He maintains that the statute utilizes general, conclusory terms. Thus, he maintains the conflict of interest statute extends beyond illegal activity and encompasses constitutionally protected activity— his right, as well as public officials' rights as a whole, to free speech. In support, Veon cites to a United States Supreme Court case, *Skilling v. United States*, 561 U.S. 358 (2010), in which the appellant there asserted that the federal honest-services statute, 18 U.S.C. § 1346, was unconstitutionally vague. Veon claims *Skilling* provides "direct and clear

guidance when evaluating Pennsylvania's very similar conflict of interest statute." Appellant's Brief at 17.

The Commonwealth disagrees. It argues that the conflict of interest statute is not vague on its face. In support, it cites precedent from this Court wherein a panel determined that the conflict of interest statute was not unconstitutionally vague. *See Commonwealth v. Habay*, 934 A.2d 732 (Pa. Super. 2007). Further, the Commonwealth claims *Skilling* is inapposite since the federal honest-services statute differs significantly from the Pennsylvania conflict of interest statute.

We can immediately dispense of Veon's reliance on *Skilling*. This exact argument was rejected in *Commonwealth v. Feese*, 79 A.3d 1101, 1128 (Pa. Super. 2013).

We proceed to discuss Veon's argument that the statute is facially vague. In *Habay*, appellant was a member of the Pennsylvania House of Representatives who directed state-paid employees under his authority to conduct campaign and/or fundraising-related work, during state-paid time, for his personal benefit, and was convicted of violation of the conflict of interest statute. On appeal, he raised, among other things, an as applied challenge to the statute. The panel noted, however, that "even if" he had raised a facial challenge "it is patently clear that the statute at hand is not vague on its face." 934 A.2d at 738. As the panel explained, the statute is not facially vague because it specifically defines the conduct prohibited:

> There is nothing unclear about the concept of using the authority of an office to obtain private pecuniary benefit. The statute prohibits people who hold public offices from exercising the power of those offices in order to secure financially related personal gain. … Given the straightforward language of the statute at hand, we find it sets forth the crime of conflict of interest with sufficient definiteness that Appellant, and indeed any ordinary person, could understand and predict what conduct is prohibited. It speaks fair warning of the proscribed conduct.

*Id*. This language is admittedly *dicta* as it pertains to a facial challenge, but we fully agree with the panel that it forecloses not only an as applied challenge, but also a facial challenge.

In essence, the statute focuses on the public resources granted to public officials, and draws a distinct line between how an official may utilize those resources. On one hand, it is permissible to use these resources for government-related purposes. On the other hand, it is wholly impermissible to utilize public resources to provide a pecuniary benefit to the office holder or a member of their family.

Further, as previously noted, a facial vagueness challenge to a statute must relate to First Amendment issues. In developing this argument, however, Veon fails to set forth a cognizable argument as to why the statute, on its face, infringes upon his First Amendment right to free speech.

The conflict of interest statute does not affect how a public official spends his own money; it affects only how the official spends public funds. The First Amendment rights of public officials are limited by the government's interest in ensuring efficient provision of government services.

*See Pickering v. Board of Educ.,* 391 U.S. 563, 568 (1968). Veon cannot establish that a public official's use of public funds for personal benefit constitutes protected First Amendment activity. That is simply not protected speech.

In fact, we have rejected a challenge of facial vagueness where a Pennsylvania State Senator argued that using state employees to conduct political campaign activities on state time with state resources constitutes constitutionally protected free speech rights. *See Commonwealth v. Orie*, 88 A.3d 983, 1026 (Pa. Super. 2014). There, the panel found that the conflict of interest statute "places no restrictions on a public official's federal or state protected rights of expression and association, but only prohibits officials from using state-funded resources for non-*de minimis* private pecuniary gain." *Id*.

Accordingly, Veon has failed to demonstrate that the statute affects a public official's First Amendment rights, let alone that it is unconstitutionally vague on its face. Next, we turn to Veon's argument that the statute is unconstitutionally vague as applied to his circumstances.

The trial court permitted the Commonwealth to argue that the statutory term "private pecuniary gain" includes "intangible political gain" such as "the utilization of misappropriated funds to garner favorable publicity, to obtain free publicity, to enhance standing in the community, or to otherwise achieve political gain." Trial Court Opinion, 1/23/13, at 5

(citing **Keller v. State Ethics Commission**, 860 A.2d 650 (Pa. Cmwlth. 2004)). Veon focuses on the trial court's alleged extension of the statutory term "private pecuniary gain" to include various "intangible political benefits" as improper. He argues that he received no gain whatsoever. But political gain costs money. The blatant and substantial "intangible political gain," as described in this case, constitutes private pecuniary gain—the misappropriated money inured to Veon's benefit.[1] Veon's scheme is set forth in detail below.

As a member of the House, Veon was entitled to $20,000.00 annually to cover the expenses of operating his district office. **See** N.T., Trial, 2/22/12, at 271. In addition, he was entitled to spend $2,300.00 monthly on office rent and vehicle costs, with office rent limited to no more than $1,650.00 per month. **See id**., at 271-72. These allotments were taxpayer-funded. **See id**., at 308. If a member of the House did not spend the allotted money for rent costs, the money could not be used for any other purposes. **See id**., at 271-72. On the other hand, if the House member spent more than $1,650.00 per month on rent, the remainder would have to be paid from the $20,000.00 annual allotment. **See id**., at 291.

---

[1] Certainly, a *de minimis* private pecuniary gain, for example, when an elected official uses an expense account to attend a county fair, would not violate the statute. We stress that it must be a non-*de minimis* private pecuniary gain. **See Orie**, 88 A.3d at 1026.

While it was possible for a House member to exceed their allotment by requesting a discretionary disbursement from the Democratic Minority Leader, such a request had its drawbacks. Within the Democratic Caucus, House members took issue with rent disparities between members. *See* N.T., Trial, 2/24/12, at 60-61. The Democratic Minority Leader received "a lot of complaints … on a lot of occasions" regarding rent disparities. *Id*. Furthermore, any money disbursed pursuant to such a request was a matter of public record. *See id*., at 61. "[S]ome members just didn't want to have the political problem of a reporter finding out they were spending way above their allotted amount of money." *Id*.

Veon's rent payments for his offices never exceeded $1,500.00 per month. *See* N.T., 2/22/12, at 296. However, he never leased his legislative offices directly from a landlord. Veon's Beaver Falls office was sublet from BIG. *See* N.T., Trial, 2/16/12, at 104. BIG paid $2,900.00 per month in rent to the landlord, and received $1,500.00 per month from Veon's House expense account. *See id*. BIG occupied only approximately 20% of the Midland office. *See id*., at 101-102; Commonwealth's Exhibit 5 (floor plan).

As noted previously, Veon was co-chair of BIG. *See* N.T. 2/16/12, at 82. BIG was originally created as a vehicle to attract and implement a variety of economic and community development throughout Beaver County. *See id*., at 75. Veon served as co-chair alongside State Senator Gerald LaValle; however, testimony established that LaValle's position was akin to a

figurehead, and he was not directly involved in the organization's operations. *See id*., at 83; N.T. 2/21/12, at 286-88. On the other hand, Veon was intimately involved with the day-to-day operations of the nonprofit and was "fiscal director" of BIG. *See* N.T. 2/16/12, at 85.

Veon's use of BIG as a means to his own personal ends was evident from the testimony of two former BIG executive directors: John Gallo and Thomas Woodske. John Gallo served as BIG executive director from 1999 to 2003. *See* N.T., 2/16/12, at 81, 218.

Shortly after his appointment to executive director, Gallo discovered that Peretta-Rosepink, Veon's co-defendant, was appointed as BIG's fiscal director. *See* N.T. 2/16/12, at 83. Peretta-Rosepink primarily worked in the legislative office, but would occasionally handle payroll matters, as well as the payment of utilities. *See id*., at 86. It was Peretta-Rosepink who secured rental office space in an old bank in Beaver Falls to use for both a legislative office and for BIG. *See id*., at 95. Peretta-Rosepink gave the lease to Gallo to sign on behalf of BIG; Gallo was not involved with negotiating the lease with the landlord, nor had he ever toured the property. *See id*., at 95-97.

The circumstances surrounding the Midland office were even less transparent. Due to a family emergency, Gallo was out of work for most of February 2003, and returned to work full-time in late February or early March. *See id*., at 129-30. While Gallo was away, Peretta-Rosepink

obtained the BIG checkbook from a BIG employee. *See id*., at 132. Upon returning, Gallo noticed a check written by Peretta-Rosepink to Rudy Presutti, whom Gallo did not know. *See id*., at 162-63. Gallo questioned Peretta-Rosepink about the check, and she responded that the check was for rent payment for the new BIG office in Midland. *See id*., at 163. This was the first time Gallo heard about a BIG office in Midland. *See id*.

Thomas Woodske succeeded John Gallo in 2003. *See* N.T., 2/22/2012, at 23. He testified that Veon's style "was not consultative at all. He dominated the organization and ran it as he saw fit." *Id*., at 12. Veon and Peretta-Rosepink consulted Woodske on two initial hires, but afterwards, Woodske was not consulted on four subsequent hires. *See* N.T. 2/21/2012, at 197-98. Woodske was never consulted about the rental of the South Side Pittsburgh Office. *See id*., at 11-12. Woodske was also never consulted regarding the lease for the Beaver Falls district office. *See id*., at 207-08. Instead, either Veon or Peretta-Rosepink would handle the negotiation of the leases. *See id*., at 208.

Veon was responsible for obtaining the public funding for BIG. *See* N.T. 2/16/12, at 75. In order to obtain the funds, Veon would have to apply for grants from the DCED. *See id*., at 75. Upon receipt of the grant monies, Gallo and Woodske had no idea that Veon had obtained rental properties in Pittsburgh's South Side or in Midland. *See id*., at 95-97; N.T. 2/22/12, at 11-12. Though these new offices were obtained for BIG, the

majority of the space was actually used for Veon's legislative offices. **See** N.T. 2/16/12, at 96-116. There were no signs indicating that BIG occupied those offices and those who wished to visit BIG employees needed to walk through the legislative office. **See id**.

The funds from BIG made up the difference in rent in each of the offices that exceeded the allotment Veon was allowed from the Commonwealth. **See** N.T. 2/24/12, at 105-06; N.T. 2/27/12, at 157-64. The public monies provided to BIG through the DCED as a result of grant applications by Veon, were then used to pay for Veon's additional legislative offices. Therefore, the money that should have been spent for BIG was otherwise spent on securing Veon additional legislative offices.

Veon was certainly placed on notice that the substantial expenditure of public funds, all to enhance his political image, was a violation of the statute. He deliberately used funds obtained for the purposes of BIG to rent space for his legislative offices. As argued by the Commonwealth, Veon was able to maintain the façade of a thrifty public servant, who took less than his monthly rental allotment, while enjoying facilities superior to those he could have obtained by merely spending his allotment, all while not expending any personal funds. Veon treated BIG as a personal bank account from which he could pursue his own ends. All of this was for his benefit. We therefore find that the conflict of interest statute is not vague as applied to the facts of this case.

Veon also contends that the conflict of interest statute is unconstitutionally overbroad. A statute is unconstitutionally overbroad, "if it punishes lawful constitutional protected activity as well as illegal activity." *Commonwealth v. Davidson*, 938 A.2d 198, 208 (Pa. 2007). In *Habay*, we rejected the same overbroad argument that Veon advances in this appeal. *See* 934 A.2d at 739.

Veon next claims the trial court abused its discretion by permitting the Commonwealth, after the close of its case, to amend the word "utilized" to "staffed" in Counts 5, 9, 13, and 17, of the criminal information, which involve theft-related offenses relating to the South Side Pittsburgh Office.[2] Veon contends this amendment changed the factual scenario supporting the underlying charges, thus prejudicing him by negatively affecting his ability to mount an effective defense. We disagree.

The criminal information "is a formal written statement charging the commission of an offense signed and presented to the court by the attorney for the Commonwealth after a defendant is held for court…." Pa.R.Crim.P. 103. The information apprises the defendant of the filed charges so he can prepare a defense. *See Commonwealth v. Sinclair*, 897 A.2d 1218, 1223 (Pa. Super. 2006).

_____

[2] Specifically, Veon was found guilty under those charges for theft by unlawful taking, theft by deception, theft by failure to make required deposit, and misapplication of entrusted property.

- 17 -

Pennsylvania Rule of Criminal Procedure 564 permits the amendment of the information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Sinclair*, 897 A.2d at 1221 (citation omitted). A court must look to see

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Id*. (citation omitted).

Relief is only proper where the amendment prejudices the defendant. *See id*., at 1223. A court must consider a number of factors in determining whether an amendment results in prejudice:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy

was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id*. (citation omitted).

The change of the word "utilized" to "staffed" in this case did not prejudice Veon. The trial court described its decision to permit the amendment by stating:

> In the case at bar, the [trial court] permitted the Commonwealth to amend the description of certain offenses contained within the original Criminal Information, specifically to change the term "utilized" to "staffed". We determined that this amendment would not alter the current factual scenario nor would it add any new facts, include any additional charges or offenses, or modify the offenses for which Mr. Veon had been charged. Rather, it clarified the description of the offenses included in the original Criminal Information, of which Mr. Veon was acutely aware, by using language which, we believe, had a substantially similar, if not the same, meaning. Accordingly, we found that Mr. Veon's defense strategy would not be affected by the change and, thus, he was not prejudiced by the amendment.

Trial Court  Opinion, 1/23/13, at 4 (footnote omitted).

This is eminently reasonable. We see no reason to disturb the trial court's decision to permit the amendment of the criminal information. The two terms need not be interchangeable, as Veon suggests, to permit amendment of the criminal information. Instead, as the trial court stated, utilization of the term "staffed" with respect to the South Side Pittsburgh Office merely clarified the underlying description of the theft-related offenses. It is reasonable to conclude that Veon, as co-chair of BIG and heavily involved in its day-to-day operations, could reasonably anticipate

that the term "utilizing" in this manner included the act of staffing the office space with BIG employees. The amendment did not change or add facts to the description of the charges. If anything, this amendment narrowed the conduct for which Veon could be convicted. Consequently, we cannot conclude that Veon would have had to modify his defense strategy pursuant to the amendment. Rather, we find that the trial court's decision to amend the criminal complaint was not an abuse of discretion.

Veon next contends that the trial court erred in permitting a *de facto* modification of the information pursuant to the phrasing on the verdict slip given to the jury. The amended criminal information states, in relevant part, that "[Veon] directed and/or approved the payment of public funds in the form of Beaver Initiative for Growth grant monies for the payment of rent of a legislative district *office*...." Amended Information, 8/16/10, at 1.[3] (emphasis added). In contrast, testimony at trial established that Veon used BIG funds to have *offices*—space in Beaver Falls, Midland, and Pittsburgh. The verdict slip given to the jury identifies the bases of counts 1, 3, 7, 11, 15, and 19 as "Rent/legislative district office." Veon objected to the verdict slip on those counts as they implicated multiple legislative offices while the information indicated only one legislative office. The trial court overruled the exception and did not modify the verdict slip.

---

[3] We note that while different language appears in counts 1, 3, 7, 11, 15, 19, each of the counts refer to "a legislative office."

After retiring to the deliberation room, the jury requested a clarification of the jury slip: "In regards to all counts stating (rent/legislative district office), does that refer to Midland, Beaver Falls, or both?" Veon renewed his objection to the variance between the information and the verdict slip. The trial court overruled the objection and instructed the jury that his answer to their question was "either, both or neither, as you may find from the evidence presented."

Veon argues that this *de facto* amendment changed the factual scenario in violation of all six factors for examining prejudice as mentioned above. **See Sinclair**, 897 A.2d at 1223. We agree with the trial court that Veon's focus on the distinction between a single or multiple offices is a red herring:

> The unlawfully diverted funds (i.e. the "BIG" grant monies) from which those offense(s) arose were used to make monthly rental payments based upon which Mr. Veon received legislative district office space in both Beaver Falls and Midland. Thus, any distinction between the two was, we believe, immaterial so long as the jury found that Mr. Veon directed, authorized and/or approved the use of those misappropriated funds for his own political purposes.

Trial Court Opinion, 1/23/13, at 4.

The essence of the various charges at issue was that Veon had used BIG funds for his personal benefit. There was no factual dispute over whether BIG funds had been expended in the relevant transactions. The only dispute was whether the BIG funds had been expended for appropriate purposes, or whether they had been used for Veon's own personal gain. The

- 21 -

distinction between the offices was not relevant, at all, to the nature of the charges or to any possible defense.

We therefore find that the variance between the amended criminal information and the verdict slip, as clarified by the trial court, did not prejudice Veon.

Veon next argues that the trial court erred in ordering restitution as the Commonwealth cannot be a victim for purposes of the restitution statute. In support, he relies on the plain text of the statute, as well as *Commonwealth v. Brown*, 981 A.2d 893 (Pa. 2009), which provided further clarification of the term "victim" for purposes of the restitution statute.

"[R]estitution is the requirement that the criminal offender repay, as a condition of his sentence, the victim or society, in money or services." *Id*., at 895 (footnote omitted). It acts to rehabilitate the offender "by impressing upon him or her that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible." *Id*. (citation omitted). "[I]t is highly favored in the law and encouraged so that the criminal will understand the egregiousness of his or her conduct, be deterred from repeating the conduct, and be encouraged to live in a responsible way." *Id*. (citation omitted).

Section 1106 of the Crimes Code mandates that restitution be paid "[u]pon conviction for any crime wherein property has been stolen,

converted or otherwise unlawfully obtained…." 18 Pa.C.S.A. § 1106(a). The statute further sets forth the individuals and entities entitled to restitution: (A) the victim; … (C) "[a]ny other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct…." 18 Pa.C.S.A. § 1106(c)(1)(ii)(A, C).

Prior to 1995, the statutory language of Section 1106 did not include Commonwealth entities under the definition of "victim." **See Commonwealth v. Runion**, 662 A.2d 617, 621 (Pa. 1995) ("[U]nless or until the legislature enacts language to the contrary, we must find that the Department of Public Welfare, as a Commonwealth entity, is expressly excluded from the definition of a 'person,' and as such may not be considered a victim under 18 Pa.C.S. § 1106."). Subsequently, the legislature amended Section 1106 in 1995 and again in 1998, broadening the class of entities eligible to receive restitution to include the Crime Victim's Compensation Board, other government agencies, and insurance companies. **See** 18 Pa.C.S.A. § 1106(c)(1)(ii)(A-D). While the legislature broadened the definition of those eligible for restitution to include government agencies, the language utilized in the amendments did not include all government agencies. This limitation is evident in our Supreme Court's analysis of Section 1106 in **Brown**.

In **Brown**, the trial court ordered the defendant to pay restitution to Medicare, which had paid a part of the amount the crime victim owed to a

hospital that had treated the victim's injuries. The issue before the Supreme Court in **Brown** was whether Medicare was entitled to restitution from defendant. Looking at the plain language of the statute, the Court concluded that while it appeared that the legislature sought to include government agencies within Section 1106, it was not clear exactly which agencies qualified. Thus, the Court turned to established principles of statutory construction, focusing heavily on the legislative history of Section 1106, to determine that the 1995 and 1998 amendments "implicitly broadened the class of entities eligible for restitution to include government agencies…." 981 A.2d at 899-900. Next, the Court sought to determine exactly which agencies were encompassed by these amendments.

Brown argued that restitution was only available to those government agencies that paid victims directly. Thus, since Medicare paid the victim's medical providers and not the victim directly, Brown contended that it was not entitled to restitution. The Court disagreed, stating, "to find restitution available only to those entities which directly paid the victim would place form over substance and ignore the realities of medical reimbursement." **Id**., at 901.

The Court acknowledged that the term "reimbursement" was not defined in the statute, "but as evinced by the broadened Section 1106, the General Assembly not only expressed an increased focus on the importance of mandatory restitution, it believed that criminal offenders should both

provide restitution to the victim directly, and to entities incurring expenses on the victim's behalf." *Id*., at 900. Further, the Court considered the dual purposes of restitution: rehabilitation and deterrence.

> [T]he main purpose behind the statute is rehabilitation of the offender by impressing upon him that this criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible, and that compensation to the victim is only secondary. Furthermore, the goals of restitution include the hope that the criminal will be deterred from repeating the conduct and encouraged to live in a responsible way.

*Id*., at 901 (citations omitted). Finally, the Court concluded that allowing those entities that directly and indirectly compensate the victim of a crime to be eligible for restitution would be consistent with the goals of rehabilitation and deterrence, as well as consistent with the goal to be obtained by the amended statute.

We conclude that the Commonwealth can be a victim under this statute. As noted in **Brown**, the General Assembly intended to have the restitution statute serve as deterrence for criminals. It would therefore be contrary to the statute's purpose and the General Assembly's intent—not to mention common sense—to have a defendant directly steal from the Commonwealth, specifically the DCED, and not be liable for restitution. Limiting restitution sentences to instances where the Commonwealth only reimburses a third party victim would otherwise encourage criminals to steal from the Commonwealth. As the Court expressed in **Brown**, to hold otherwise would place form over substance and ignore the realities and

purpose of the statute. Therefore, we must conclude that the Commonwealth is a victim to which an order of restitution can be paid when the Commonwealth is the direct victim of a crime.

We now turn to whether the amount of restitution ordered by the trial court was proper. Veon contends that the amount of restitution ordered by the trial court was both speculative and excessive. Veon's claim that the order of restitution is unsupported by the record challenges the legality of the sentence. *See Commonwealth v. Atanasio*, 997 A.2d 1181, 1183 (Pa. Super. 2010). "[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." *Id*. (citation omitted).

A court must be guided by the following when computing restitution:

Although restitution does not seek, by its essential nature, the compensation of the victim, the dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution. A restitution award must not exceed the victim's losses. A sentencing court must consider the victim's injuries, the victim's request as presented by the district attorney and such other matters as the court deems appropriate. The court must also ensure that the record contains the factual basis for the appropriate amount of restitution. In that way, the record will support the sentence.

*Commonwealth v. Plegler*, 934 A.2d 715, 720 (Pa. Super. 2007) (citations omitted).

Turning to the merits, we find that the trial court's order of restitution in the amount of $135,615.00 is supported by the record. The amount of

the restitution was based on the rent payments from each of Veon's offices minus the amount of money the comptroller's office deposited into BIG.

Despite the record's support for the amount of the restitution, however, the causal connection between the jury's guilty verdict and the amount of restitution is missing. While the jury found Veon guilty on the counts regarding the rent of the legislative offices, the guilty verdict indicated that the jury found Veon guilty of stealing from either legislative office, both legislative offices, or neither office. In regards to Counts 1, 3, 7, 11, 15, and 19, the record does not specify which legislative office Veon stole from, nor can it be assumed or speculated by the trial court that the jury convicted Veon of stealing from both offices (Midland or Beaver Falls). Therefore, the trial court could not properly determine which office the jury had in mind when it issued its guilty verdict. Therefore, the trial court had no basis for determining the causal connection of the damages that stemmed from his guilty conduct concerning those above-mentioned guilty counts.

Our resolution of this issue does not contradict our earlier discussion of the verdict slip. While the location of the offices was irrelevant to whether Veon committed the crimes charged, the specific method of calculating restitution chosen by the trial court relies directly upon where the stolen funds were spent. Since the verdict slip, as clarified by the trial court, equally supports jury findings that Veon spent the stolen funds on only the

Beaver Falls office, only the Midland office, or both, picking any one of these three options constitutes mere speculation. Accordingly, we conclude that the record before us does not support a finding of a direct causal relationship between the amounts paid for rent at each office and the jury's verdict.

However, there is a causal connection between the restitution amount regarding counts 5, 9, 13, and 17. This is because the jury found Veon guilty for stealing funds with respect to the Pittsburgh office, and thus, there is a causal connection between the guilty verdict on those charges and the restitution amount.

Therefore, the trial court erred in its order of sentence of restitution in the amount of $135,615.00. The amount of restitution imposed upon Veon as a result of counts 1, 3, 7, 11, 15, and 19 must be vacated as there is no causal connection between the guilty verdicts and the losses sustained by the victim. We affirm the amount of restitution imposed upon Veon regarding counts 5, 9, 13, and 17. Upon remand, the trial court is to determine if there is an appropriate method to calculate restitution in light of our decision regarding counts 1, 3, 7, 11, 15, and 19.

Veon also argues that the Commonwealth cannot be a victim under 18 Pa.C.S.A. § 3921, Theft by unlawful taking or disposition, 18 Pa.C.S.A. § 3922, Theft by deception, and 18 Pa.C.S.A. § 3927, Theft by failure to make required disposition of funds received.

Recently, this Court decided the exact argument posed by Veon concerning whether the Commonwealth could be victim under 18 Pa.C.S.A. § 3921 and § 3922 in **Commonwealth v. Stetler**, 95 A.3d 864 (Pa. Super. 2014), wherein the panel adopted the trial court's opinion in the matter as its own. **See id**., at 882. Therefore, we affirm Veon's guilty verdict on the charges of theft by deception and theft by unlawful taking.

We next address Veon's challenge to the guilty verdict on the charges of theft by failure to make required disposition funds received. That crime is defined as follows:

> **(a) Offense defined.**--A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a).

Veon argues that under this provision of the Crimes Code the Commonwealth cannot be a victim since the statute does not specify if the victim must be a person or government entity. We reject this argument.

Section 3927(a) requires a person who accepts money or property of another pursuant to an agreement to meet the obligations of the agreement. **See Commonwealth v. Wood**, 637 A.2d 1335, 1344 (Pa. Super. 1994). An agent who has received funds subject to an obligation to make a required

payment may commingle funds if he so chooses without penalty as long as the obligation for which the money or property is entrusted is met in a timely fashion. *See Commonwealth v. Fritz*, 470 A.2d 1364, 1366 (Pa. Super. 1990). "The language of the statute, that a person is guilty of theft by failure to make required disposition of funds if he 'deals with property as his own,' does not require that the defendant *actually use the property of another*." *Wood*, 637 A.2d at 1344 (emphasis added). The word "deals" means that the defendant took the property designed for a specific use and used it as if it were his or her own property. *See id.*

The case law indicates that the emphasis of the statute is centered on the actions of the defendant—not the status of the victim. It is clear that the language of Section 3927(a) requires convictions of any actor that uses property of another inappropriately and fails to perform according to the legal obligation. That is exactly what Veon did here. Thus, his argument fails.

Next, Veon alleges the prosecution improperly destroyed witness interview notes thus depriving him of a fair trial. Further, he claims that such destruction violated a litany of constitutional rights, rules of criminal procedure, and rules of professional conduct. We begin by noting that Veon has failed to properly present this issue for review by improperly incorporating his argument by reference. Specifically, Veon states, "[t]he specific issue of destruction of notes by the prosecutors in Bonusgate

prosecutions has been raised by the defense in the matter of *Commonwealth v. Feese* at Superior Court No. 338 MDA 2012." Appellant's Brief at 57. Veon includes Feese's brief in the Reproduced Record.

Veon's argument fails for several reasons. As it turns out, this issue did not provide relief for Feese. *See Commonwealth v. Feese*, 79 A.3d 1101, 1105-1115 (Pa. Super. 2013). Furthermore, this issue is waived as Rule 2119(a) of the Rules of Appellate Procedure requires a properly developed argument for each question presented. This requires, among other things, a discussion of and citation to authorities in the appellate brief and "the principle for which they are cited." *See* Pa.R.A.P. 2119(a), (b). Failure to conform to the Rules of Appellate Procedure results in waiver of the underlying issue. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (en banc). Incorporation by reference does not constitute a properly developed claim.

Our Supreme Court has categorically rejected incorporation by reference as a means of presenting an issue. The Court has called the practice "unacceptable" and explained, "our appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals, or briefs attached as appendices, as a substitute for the proper presentation of arguments in the body of the appellate brief." *Commonwealth v. Briggs*, 12 A.3d 291, 342-343 (Pa. 2011) (citations

omitted). The allowance of incorporation by reference "would enable wholesale circumvention of our appellate rules which set forth the fundamental requirements every appellate brief must meet." *Id*., at 343 (citations omitted). Accordingly, we find this issue waived.[4]

Lastly, Veon argues that the Commonwealth failed to present sufficient evidence to sustain his convictions. Before turning to the merits of Veon's claim, however, we must determine if he preserved this claim.

In order to preserve a challenge to the sufficiency of the evidence on appeal, the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013); *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). "Such specificity is of particular importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Garland*, 63 A.3d at 344 (quoting *Gibbs*, 981 A.2d at 281). In *Garland*, the appellant's Rule 1925(b) statement simply stated,

---

[4] Veon admittedly presents no factual support for his claim that the prosecutor admitted to the destruction of interview notes. *See* Appellant's Brief at 56 n.24 ("The original admission by Mr. Fina does not appear in the record."). The trial court determined that "[a]fter thoroughly questioning the prosecutors in this case, we found there to be no evidence which demonstrated that the prosecutors, or their agents, destroyed notes and/or documentation that had not already been memorialized in written form and disclosed to the defense." Trial Court Opinion, 1/23/13, at 6.

"[t]he evidence was legally insufficient to support the convictions." ***Id***. The panel found the claim waived, noting that the appellant "not only failed to specify which elements he was challenging in his Rule 1925(b) statement, he also failed to specify which conviction he was challenging." ***Id***.

Reviewing Veon's Rule 1925(b) statement, we find that it is strikingly similar to the statement at issue in ***Garland***. Veon's Rule 1925(b) statement states in relevant part, "[t]he evidence was insufficient to prove beyond a reasonable doubt that Mr. Veon committed any crime whatsoever." Rule 1925(b) Statement, 12/31/12, at 4. We are constrained to find Veon's claim waived, as his Rule 1925(b) statement is sweeping and generalized that maintains that the evidence was insufficient, but utterly fails to pinpoint any specific crime or any element of his convicted crimes that lacked sufficient evidence. ***See Garland***.

In any event, even if we were to address this claim on the merits, we would have concluded that for the reasons set forth in our discussion of Veon's argument raising vagueness concerns, the evidence was sufficient to support all of Veon's convictions.

Judgment of sentence at 1698 MDA 2012 as to the convictions and order of restitution at counts 5, 9, 13, and 17 affirmed and restitution vacated at counts 1, 3, 7, 11, 15, and 19. Appeal at 2168 MDA 2012 quashed. Case remanded for further restitution proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/2015