J-S35045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SERGIO SANCHEZ, | |
| Appellant | No. 1567 EDA 2014 |

Appeal from the Judgment of Sentence March 28, 2013
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0008117-2010

BEFORE:  MUNDY, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED JUNE 17, 2015**

Appellant, Sergio Sanchez, appeals from the judgment of sentence imposed following his bench conviction of unlawful contact with a minor, indecent assault, corruption of a minor, terroristic threats, and simple assault.[1]  Appellant challenges the sufficiency of the evidence to support his conviction.  We affirm.

The trial court aptly summarized the facts of this case as follows:

Between the ages of [ten] and [twelve], G.M. lived with her mother at 5350 Oakland Street in the City and County of Philadelphia.  Appellant was a family friend who would often

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6318, 3126, 6301, 2706, and 2701, respectively.

work as a handyman at their home.[2]  G.M. viewed Appellant as an uncle and would often give him hugs and kisses on the cheek.  On one occasion, when G.M. was [ten] years old, Appellant was performing a job and told G.M. to get him some tools.  When she went to retrieve the tools, Appellant pulled her into the corner and kissed her on the lips.  G.M. did not say anything because she, "didn't think it meant anything."  [(N.T. Trial, 12/04/12, at 8).]  On a second occasion, while G.M. was [eleven] years old and home alone, Appellant was working at the house.  Appellant was working in the basement and at one point came upstairs and told G.M. to take her shirt off, which she did not do.  Appellant told her not to tell anyone or someone in her family would get hurt.  On a third occasion, while G.M. was still [eleven] years old, Appellant was again working in the family's basement when Appellant came into G.M.'s room.  Appellant forced G.M. on top of her bed and laid on top of her, kissing her neck and chest.  Appellant also touched her vagina over her clothes.  G.M. pushed Appellant off of her and shut the door on him.  G.M. did not tell anyone about the incident because she was trying to protect her family.  On a fourth occasion, Appellant was working on the family's driveway while G.M. was inside.  Appellant requested, through an open window that G.M. get him some juice.  G.M. went to the basement and was going to exit through a door that led to the driveway, but Appellant met her in the basement and grabbed her breast over her shirt.

Some time after the fourth incident, G.M.'s aunt [,S.G.,] was having a discussion about puberty with [her] and G.M. told her aunt what had occurred because it was eating at her and she, "couldn't take it anymore."  [(*Id.* at 11).]  G.M's aunt told her mother, [(Mother)].  [Mother] testified that when she asked G.M. about the incidents, G.M was afraid and thought she would be in trouble.  G.M. also seemed sad and was reluctant to discuss the incidents.  After discussing the matter with G.M., [Mother] called a children's hotline.  The hotline told her to report the matter to the police, which she did.  Officer Sheri Day took G.M.'s statement and observed that she was upset and nervous during the interview.  [Mother] was also present and was also upset[.]

_____

[2] Appellant's date of birth is September 21, 1968.  (**See** Trial Court Opinion, 11/14/14, at 2).

After speaking to G.M., [Mother] ran into Appellant at a property she owned. Appellant attempted to talk to her and said that he wanted to fix this. [Mother] refused to talk to Appellant. Later, Appellant came to [Mother's] home and said that he wanted to fix the situation and that it "doesn't have to go that far." ([*Id.*]at 37).

Conversely, Appellant testified that he had known [Mother] and G.M. for ten years and they were close family friends. Appellant testified that he would hug and kiss G.M. like an uncle but that he never touched her inappropriately. He stated that he dated G.M.'s aunt, [S.G.], for three to four months and had given her money on several occasions. He testified that on the last occasion she had asked for money, he refused and she became upset. Appellant implied that there was a motive to coerce G.M. to fabricate the sexual encounters for revenge. [The trial] court found this argument without merit and not worthy of belief.[3]

(Trial Ct. Op., at 2-4) (some record citations omitted).

On December 4, 2012, following a bench trial, the court found Appellant guilty of the above-stated offenses. It deferred sentencing for preparation of pre-sentence investigation and mental health reports. On March 28, 2013, the court sentenced Appellant to an aggregate term of not less than one day nor more than twenty-three months' incarceration, with immediate parole to house arrest for six months, followed by five years' probation. Appellant did not file post-sentence motions or a direct appeal.

On April 22, 2014, Appellant filed a counseled petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, seeking

---

[3] The court found G.M.'s testimony "very compelling and completely believable." (Trial Ct. Op., at 5).

J-S35045-15

reinstatement of his post-sentence and direct appeal rights *nunc pro tunc*.

The PCRA court granted the petition on April 29, 2014. This timely appeal

followed.[4]

Appellant raises five issues for our review:

I.      Whether the evidence submitted at trial was sufficient to convict [Appellant] of [i]ndecent [a]ssault where the evidence presented suggested he did not have the required *mens rea* to commit the crime?

II.     Whether the evidence submitted at trial was sufficient to convict [Appellant] of [u]nlawful [c]ontact with a [m]inor, where the evidence presented did not rise to the level necessary to make out the crime?

III.    Whether the evidence submitted at trial was sufficient to convict [Appellant] of [c]orruption of the [m]orals of a [m]inor where no evidence was presented that he corrupted the morals of a minor as contemplated in the statute he was convicted under?

IV.     Whether the evidence submitted at trial was sufficient to convict [Appellant] of [t]erroristic [t]hreats where the evidence presented at trial showed the alleged threats to [be] unspecific, not involve any weapon or direct threat, and be in the heat of the moment?

V.      Whether the evidence submitted at trial was sufficient to convict [Appellant] of [s]imple [a]ssault where there is no evidence of any injuries, or that the [c]omplainant was struck in any way?

_____

[4] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on July 8, 2014. **See** Pa.R.A.P. 1925(b). We note that, although the document is titled "Preliminary Concise Statement of Matters Complained of on Appeal," Appellant did not file a supplemental statement. (Rule 1925(b) Statement, 7/08/14, at 1). The court filed an opinion on November 14, 2014. **See** Pa.R.A.P. 1925(a).

(Appellant's Brief, at 3).

All of Appellant's issues challenge the sufficiency of the evidence supporting his conviction. Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa. Super. 2014) (citations omitted).

Preliminarily, we must determine whether Appellant properly preserved his issues for our review. Pennsylvania Rule of Appellate

Procedure 1925(b) provides, in pertinent part: "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived"). "In order to preserve a challenge to the sufficiency of the evidence on appeal, the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient." *Commonwealth v. Veon*, 109 A.3d 754, 775 (Pa. Super. 2015) (citations omitted).

In the instant case, after review of the record, we conclude that Appellant has waived his first, second, and fourth issues on appeal, in which he challenges his convictions for indecent assault, unlawful contact with a minor, and terroristic threats, respectively. (*See* Appellant's Brief, at 3). In his Rule 1925(b) statement, Appellant generically and vaguely alleges with respect to unlawful contact with a minor and terroristic threats: "the evidence was insufficient where the complaining witness[']s testimony was inconsistent, and the complaining witness[']s behavior is inconsistent with being a victim of such a crime." (*See* Rule 1925(b) statement, 7/08/14, at 1-2 ¶¶ 1, 4). Appellant failed to identify any specific element of these crimes that lacked sufficient evidence. With regard to indecent assault, he repeats this same general allegation and adds: "Further, there is no evidence that the complaining witness ever came into contact with, or even

saw, any seminal fluid, urine or feces." (*Id.* at 2 ¶ 2). However, Appellant did not carry these allegations forward to his appellate brief. Instead, for each offense, he challenges the sufficiency of the evidence on different bases.[5] Because Appellant failed to include the claims discussed in his brief in his Rule 1925(b) statement, he waived them for purposes of appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *Lord*, *supra* at 309; *Veon*, *supra* at 775.

We next address the issues Appellant preserved for review in his Rule 1925(b) statement, issues three and five. (*See* Rule 1925(b) statement, 7/08/14, at 2 ¶¶ 3, 5).

In Appellant's third issue, he claims that the evidence was insufficient to support a corruption of minors conviction "where there is no indication that [he] did anything to corrupt the morals of a minor as indicated in the statute." (Appellant's Brief, at 14). He argues that the conviction cannot be sustained because there is no evidence that he encouraged the victim to commit any crime. (*See id.* at 15; Rule 1925(b) statement, 7/08/14, at 2 ¶ 3). This issue lacks merit.

_____

[5] Specifically, in his brief, with respect to the indecent assault conviction (issue one in the brief), Appellant argues that the Commonwealth failed to prove that he had the requisite *mes rea* to commit the crime. (*See* Appellant's Brief, at 10-12). With regard to the unlawful contact with a minor conviction (issue two), he asserts that the evidence did not show that he made multiple sexually explicit comments to the victim; at most he made one. (*See id.* at 12-13). Finally, regarding the terroristic threats offense (issue four), Appellant contends that his alleged threats seemed to be "spur of the moment," and there was no evidence that he had any weapon or intended to terrorize the victim. (*Id.* at 16).

The offense of corruption of minors is defined in relevant part as follows:

**(a) Offense defined.—**

(1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, **or** who aids, abets, entices or encourages any such minor in the commission of any crime, **or** who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1)(i) (emphases added).[6]

In **Commonwealth v. Slocum**, 86 A.3d 272 (Pa. Super. 2014), this Court addressed a sufficiency challenge similar to the claim advanced by Appellant. In **Slocum**, the appellant "maintain[ed] that there was no evidence that [he] attempted to encourage the child to commit any crime, to violate his probation or parole or commit any act which the statute was designed to prohibit." **Slocum**, **supra** at 277 (record citation and internal quotation marks omitted). This Court rejected Slocum's argument, explaining:

> . . . [A] conviction for corrupting morals will be upheld where the conduct of the defendant tends to corrupt the minor's morals. The statute speaks to

---

[6] The trial court and the Commonwealth quote subsection (a)(1)(ii), the felony grading of the statute. (**See** Trial Ct. Op., at 6; Commonwealth's Brief, at 16). However, Appellant was convicted under subsection (a)(1)(i), the misdemeanor grading of the statute. (**See** Sentencing Order, 3/28/13, at 1; Appellant's Brief, at 15).

conduct toward a child **in an unlimited variety of ways** which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct. . . .

The statute requires that the knowing, intentional acts of the perpetrator **tend** to have the effect of corrupting the morals of a minor.

This court has visited the question of what constitutes "corruption" of a minor's morals before. In ***Commonwealth v. Decker***, 698 A.2d 99, 101 (Pa. Super. 1997),[*appeal denied*, 705 A.2d 1304 (Pa. 1998)], we held that actions that tended to corrupt the morals of a minor were those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain."

***Decker*** had explained that:

In deciding what conduct can be said to corrupt the morals of a minor, " '[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.' "

Corruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected.
***Decker***, ***supra*** at 101.

***Slocum***, ***supra*** at 277-78 (footnotes and most citations omitted; emphases

in original).

Here, Appellant argues that, because he did not entice or encourage the victim to commit a crime, the evidence was insufficient to sustain his conviction. (*See* Appellant's Brief, at 15). However, this argument ignores the plain language of section 6301, written in the disjunctive, which states that a person is guilty if he corrupts or tends to corrupt the morals of a minor **or** if he encourages the minor to commit a crime. *See* 18 Pa.C.S.A. § 6301(a)(1)(i). Further, the record in this case shows that Appellant, while approximately forty years old, repeatedly forcibly kissed the daughter of a purported family friend while she was between the ages of ten and twelve. (*See* N.T. Trial, 12/04/12, at 7-9, 12; Information, 7/07/10, at 1). Appellant pinned the victim on her bed, kissed her neck and chest, and touched her vagina over her clothes. (*See* N.T. Trial, 12/04/12, at 9-10). Appellant directed the victim not to tell anyone about the encounters, and warned that if she did, "someone would get hurt in [her] family." (*Id.* at 8-9; *see id.* at 10).

After review, we conclude that Appellant's "actions were of a type that would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *Slocum*, *supra* at 281 (citation and internal quotation marks omitted). Under our standard of review, viewing the evidence in the light most favorable to the Commonwealth, together with all reasonable inferences, we conclude that there was more than sufficient evidence for the court to convict Appellant of

corruption of minors. *See Harden*, *supra* at 111. Appellant's third issue is meritless.

In Appellant's fifth and final issue, he challenges the sufficiency of the evidence supporting his conviction for simple assault. (*See* Appellant's Brief, at 16-17). He maintains that the conviction cannot be sustained where he never struck or attempted to strike the victim, and she did not suffer any injuries. (*See id.*; Rule 1925(b) statement, 7/08/14, at 2 ¶ 5). We disagree.

> 18 Pa.C.S.A. § 2701, pertaining to simple assault, provides, in relevant part, that "[a] person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.[A.] § 2301. The Commonwealth need not establish the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. *See* 18 Pa.C.S.A. § 2701. This intent may be shown by circumstances, which reasonably suggest that a defendant intended to cause injury.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012) (case citation omitted).

Here, the record reflects that Appellant grabbed the eleven-year-old victim, forced her into her bedroom and onto her bed, and had sexual contact with her against her will. (*See* N.T. Trial, 12/04/12, at 8-10). She managed to push him away, and after the incident, Appellant told her "not [to] tell anyone or someone will get hurt." (*Id.* at 10).

- 11 -

Based on these circumstances, viewing the evidence in the light most favorable to the Commonwealth, **see Harden**, **supra** at 111, we have no difficulty in determining that the trial court reasonably inferred that Appellant attempted to inflict bodily injury on the victim. **See Martuscelli**, **supra** at 948. Appellant's argument that the victim did not actually suffer any injury is irrelevant because "[t]he Commonwealth need not establish the victim actually suffered bodily injury[.]" **Id**. Accordingly, we conclude that the evidence sufficiently supports Appellant's conviction for simple assault. Appellant's fifth issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2015