J.A30043/15
J.A30044/15
J.A30045/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HRISTOS DIMOU, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1845 EDA 2014 |

Appeal from the Judgment of Sentence January 9, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division No(s): CP-39-CR-0000616-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BARBARA PAXOS, | : | |
| | : | |
| Appellant | : | |
| | : | No. 2130 EDA 2014 |

Appeal from the Judgment of Sentence January 9, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division No(s): CP-39-CR-0000615-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PENELOPE VERONIKIS, | : | |
| | : | |
| Appellant | : | |
| | : | No. 2031 EDA 2014 |

Appeal from the Judgment of Sentence January 9, 2014
In the Court of Common Pleas of Lehigh County

J.A30043/15
J.A30044/15
J.A30045/15

BEFORE: MUNDY, JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED JANUARY 29, 2016**

Appellants, Hristos Dimou, Barbara Paxos, and Penelope Veronikis, appeal from the judgments of sentence entered in Lehigh County Court of Common Pleas following a multi-day jury trial. Dimou was convicted of dealing in the proceeds of illegal activities,[1] theft by unlawful taking,[2] receiving stolen property,[3] and conspiracy to commit dealing in the proceeds of illegal activities.[4] Paxos was convicted of receiving stolen property. Veronikis was convicted of dealing in the proceeds of illegal activities, theft by unlawful taking, theft by deception,[5] theft by failure to make required

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 5111(a)(2).

[2] 18 Pa.C.S. § 3921(a).

[3] 18 Pa.C.S. § 3925(a).

[4] 18 Pa.C.S. § 903(c).

[5] 18 Pa.C.S. § 3922(a)(1). Under 42 Pa.C.S. § 9717:

> when the victim is over 60 years of age and not a police officer [the defendant] shall be sentenced to a mandatory term of imprisonment as follows: . . . 18 Pa.C.S. § 3922 (relating to theft by deception)—not less than 12 months, but the imposition of the minimum sentence shall be discretionary with the court where the court finds justifiable cause and that finding is written in the opinion.

disposition of funds received,[6] and conspiracy to commit dealing in the proceeds of illegal activities. Dimou challenges the sufficiency of evidence for his convictions and the restitution order for $260,000.[7] Paxos challenges the sufficiency and weight of the evidence for her conviction and the restitution order. Veronikis challenges the sufficiency and weight of the evidence for all of her convictions, the restitution order, and the discretionary aspects of her sentence. We affirm the convictions and judgments of sentence for Dimou and Veronikis. We affirm the conviction for Paxos, but modify her restitution order to reflect an amount of $160,000.

As we write for the parties, we adopt the facts and procedural history set forth by the trial court's opinions. **See** Dimou Trial Ct. Op., 6/20/14, at 2-6; Paxos Trial Ct. Op., 6/20/14, at 2-6; Veronikis Trial Ct. Op., 6/20/14, at 2-7. Dimou conceded depositing $52,750 within six weeks of the sale of the victim's vacation home. N.T., 10/15/13, at 221. We add that Veronikis testified on her own behalf and Dimou's testimony from the grand jury was read into the record without objection.

---

42 Pa.C.S. § 9717(a).

[6] 18 Pa.C.S. § 3927(a).

[7] For each appellant, the restitution order for $260,000 was joint and several with the other appellants. **See, e.g.**, N.T. Paxos Sentencing Hr'g, 1/9/14, at 7.

A jury convicted all Appellants. The court sentenced Dimou to an aggregate term of twelve months minus one day to twenty-four months minus one day, followed by a consecutive eight years' probation, and to pay restitution in the amount of $260,000. Paxos was sentenced to two years' probation and restitution for $260,000. With respect to Veronikis, following a pre-sentence investigation, the court sentenced her to an aggregate term of thirty-two months to twenty-seven years' imprisonment. ***See generally*** N.T. Veronikis Sentencing Hr'g, 1/9/14, at 2. The aggregate sentence is comprised of the following: sixteen months to twenty years' imprisonment and a $520,000 fine for dealing in the proceeds of illegal activities; sixteen months to seven years' imprisonment and a $15,000 fine for theft by unlawful taking, consecutive to the prior sentence; fourteen months to twenty years' imprisonment for conspiracy, concurrent to the initial sentence for dealing in the proceeds of illegal activities; and restitution in the amount of $260,000. With the parties' agreement, the court merged receiving stolen property, theft by deception, and theft by failure to make required disposition of funds received into the theft by unlawful taking count. N.T. Veronikis Sentencing Hr'g, 1/9/14, at 27. The court, therefore, did not impose a mandatory minimum sentence for theft by deception.

All Appellants filed post-sentence motions, all of which the court denied on June 20, 2014. In her post-sentence motion, Veronikis argued,

*inter alia*, that the court imposed an unreasonably lengthy maximum sentence of twenty-seven years "under all of the circumstances." Veronikis's Mot. for Reconsideration of Sentence, 1/21/14, at 2. She also contended the sentence was excessive when the court ordered that the sentence for theft by unlawful taking be consecutive to the sentence for dealing in the proceeds of illegal activities. **Id.** Veronikis also claimed the restitution amount was inaccurate. Both Paxos and Veronikis challenged the weight of the evidence. All Appellants timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement challenging, *inter alia*, the sufficiency of the evidence.[8]

We address Dimou's issues first. Dimou raised the following issues in his brief:

> Was the evidence insufficient to support [Dimou's] conviction for conspiracy to deal in the proceeds of unlawful activity, where the evidence was insufficient as a matter of law to support the elements of conspiracy?
>
> Was the evidence insufficient to support [Dimou's] conviction for dealing in the proceeds of unlawful activity?

---

[8] The Rule 1925(b) statements for Paxos and Veronikis failed to identify the element or elements of the crimes allegedly not proven. **See Commonwealth v. Flores**, 921 A.2d 517, 522 (Pa. Super. 2007) (holding failure to identify element of offense resulted in waiver of sufficiency claim). Our Supreme Court, however, has found that when the basis for the sufficiency challenge is "relatively straightforward," this Court should "conduct the requested sufficiency review." **Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007). Because the crimes are relatively straightforward, we decline to find waiver. **See id.**

Was the evidence insufficient to support [Dimou's] conviction for theft by unlawful taking?

Was the evidence insufficient to support [Dimou's] conviction for receiving stolen property?

Should the restitution order against [Dimou] in the amount of $260,000.00 be set aside?

Dimou's Brief at 5.

We summarize the arguments for Dimou's first four issues. Dimou contends that the evidence did not establish an agreement to commit crimes with Veronikis. Dimou maintains that the record established only that he accepted loan repayments from Veronikis and he had no knowledge that Veronikis planned or engaged in criminal acts. He asserts that the evidence was mere innuendo. With respect to his conviction for dealing in the proceeds of unlawful activities, Dimou argues the record demonstrated he had no knowledge that those funds were proceeds of illegal activities or that the underlying transaction was deceptive. Regarding theft by unlawful taking, Dimou claims there was no knowledge or intent that his receipt of funds would deprive the victim of her property. Finally, for receiving stolen property, Dimou alleges he had no knowledge that the funds were stolen. The Commonwealth counters by quoting extensive excerpts from the trial transcript that, in its view, established Dimou's guilt for all of his convictions. Dimou is due no relief.

The standard of review for a challenge to the sufficiency of evidence is *de novo*, as it is a question of law. ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235 (Pa. 2007).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

***Id.*** at 1235-36 (citations and some punctuation omitted). "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." ***Id.*** at 1237 (citation and some punctuation omitted).

We set forth the statutory elements as follows:

**§ 5111. Dealing in proceeds of unlawful activities**

**(a) Offense defined.—**A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:

\* \* \*

(2) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity and that the transaction is designed in whole or in part to conceal or disguise the nature, location, source,

ownership or control of the proceeds of unlawful activity.

18 Pa.C.S. § 5111(a)(2). "Unlawful activity" is defined as "Any activity graded a misdemeanor of the first degree or higher under Federal or State law." 18 Pa.C.S. § 5111(f).

### § 3921. Theft by unlawful taking or disposition

**(a) Movable property.—**A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S. § 3921(a).

### § 3925. Receiving stolen property

**(a) Offense defined.—**A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a).

Receiving stolen property is established by proving that the accused intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner. . . .

Importantly, the Legislature expressly defined the required mental state as "knowing" or "believing." Because the Legislature excluded mental states such as recklessness, negligence, or naïveté about the stolen status of the property, those mental states are insufficient. . . .

[T]he defendant must, at a minimum, harbor the personal belief that the item is probably stolen. . . .

Guilty knowledge (like all culpable mental states) may be proved by circumstantial evidence. Often, intent cannot be proven directly but must be inferred from examination of the facts and circumstances of the case. When examining the totality of the circumstances to determine if there is sufficient evidence from which a jury could infer the requisite *mens rea*, we must, as with any sufficiency analysis, examine all record evidence and all reasonable inferences therefrom. . . .

\* \* \*

The Crimes Code does not . . . explain [the phrase "belief that the item is probably stolen."] However, it is clear that it is designed to criminalize situations where the defendant does not know for certain that the goods are stolen, but nevertheless has: (1) considered the possibility that the goods are stolen and (2) concluded that the answer is at the very least, "probably." This Court has determined that such a belief can be proven by any number of circumstantial factors:

In order to establish the *mens rea* element of the crime of receiving stolen property, the Commonwealth must prove that the accused possessed property with "guilty knowledge", *i.e.*, knowing that it has been stolen, or believing that it has probably been stolen.

The necessary knowledge may be demonstrated by circumstantial evidence, and an inference of guilty knowledge may be drawn from unexplained possession of recently stolen goods. Whether possession is recent and whether it is unexplained are normally questions of fact for the trier of fact.

Other circumstances involved in any given case may also be considered by the trier of fact in determining if the inference of guilty knowledge may properly be drawn from

the unexplained possession. Amongst such circumstances are the accused's conduct at arrest and his conduct while in possession of the goods, as well as, the accused's relationship, if any, with the victim of the theft. Once the inference is properly drawn by the trier of fact and pursuant to the understanding that it cannot be drawn unless he is convinced that the unexplained possession is so recent as to convince him of the inferred fact beyond a reasonable doubt and his conviction of the same is not weakened below this standard by other circumstances, an appellate court may not reverse unless, after considering the evidence, it believes a juror or judge, acting in a reasonable and rational manner, could not have been convinced beyond a reasonable doubt.

***Commonwealth v. Newton***, 994 A.2d 1127, 1131-33 (Pa. Super. 2010)

(brackets, citations, some internal quotation marks, and footnote omitted).

The Crimes Code defines conspiracy as follows:

**§ 903. Criminal conspiracy**

\* \* \*

**(c) Conspiracy with multiple criminal objectives.—**If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S. § 903(c).

[T]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. We have held:

The essence of a criminal conspiracy is the common understanding that a particular criminal objective is

to be accomplished. Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, i.e., that the Appellant was an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement. The defendant does not need to commit the overt act; a co-conspirator may commit the overt act.

Proof of a conspiracy is almost always extracted from circumstantial evidence. The Commonwealth may present a web of evidence linking the defendant to the conspiracy beyond a reasonable doubt. The evidence must, however, rise above mere suspicion or possibility of guilty collusion. We have held that, among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. Moreover:

Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

\* \* \*

The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy. It is the existence of shared criminal intent that is the *sine qua non* of a conspiracy.

- 11 -

The duration of a conspiracy depends upon the facts of the particular case, that is, it depends upon the scope of the agreement entered into by its members.

***Commonwealth v. Vargas***, 108 A.3d 858, 873-74 (Pa. Super. 2014) (*en banc*) (brackets, quotation marks, and citations omitted), *appeal denied*, 121 A.3d 496 (Pa. 2015).

**§ 3922. Theft by deception**

**(a) Offense defined.—**A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise . . . .

18 Pa.C.S. § 3922(a)(1). "Deception is defined as intentionally creating or reinforcing a false impression. The Commonwealth must also show that the victim relied on the false impression created or reinforced by the defendant."

***Commonwealth v. Sanchez***, 848 A.2d 977, 983 (Pa. Super. 2004) (citations omitted).

**§ 3927. Theft by failure to make required disposition of funds received**

**(a) Offense defined.—**A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of

- 12 -

> theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S. § 3927(a).

Instantly, a review of the record in the light most favorable to the Commonwealth, as the verdict winner, reveals the following. Dimou testified he promised to care for the victim, and was pleased when Veronikis, his then-girlfriend, bonded with the victim. N.T., 10/15/13, at 123. At a meeting with the victim and the victim's then-attorney, Dimou indicated that Veronikis had the victim's will and that "things were being taken care of." N.T., 10/14/13, at 36. The victim did not speak and did not respond to the then-attorney's attempts to converse with her. *Id.* The victim's then-attorney met with the victim and Veronikis a few days later. As a result, the attorney suspected elder abuse and contacted a local government agency. *Id.* at 44.

Within six months of Veronikis's initial contact with the victim, Veronikis had power of attorney over the victim's affairs. One attorney observed that in his thirty years of experience, he had never prepared a power of attorney for a non-relative. N.T., 10/10/13, at 39. After Dimou received, *inter alia*, a $34,000 check drawn on Veronikis's and Paxos's joint account, Dimou testified that Veronikis told him that the victim was the

source of the funds. N.T., 10/15/13, at 105-07. He was also unable to explain why, among other things, he was paid $3,000 for a funeral lunch held at his diner or why he deposited $52,750 into his account within six weeks of the sale of the victim's vacation home. *Id.* at 196-98, 221.

The entire record, when viewed in the Commonwealth's favor and accounting for all reasonable inferences, was sufficient to sustain the jury's verdict for all of his convictions. *See Ratsamy*, 934 A.2d at 1235-36. It was for the jury to evaluate the evidence including, *inter alia*, Dimou's conduct during the police investigation, his conduct while possessing the victim's funds, and his relationship with the victim. *See Newton*, 994 A.2d at 1131-33. Conversely, we cannot conclude that the jury acted unreasonably and irrationally in arriving at its verdict. *See Ratsamy*, 934 A.2d at 1235-36.

In support of Dimou's last issue on appeal, he argues that the record does not support a restitution order of $260,000, as that is the amount co-defendant Veronikis stole from the victim. Dimou contends that assuming this Court affirms all of his convictions, the restitution amount should be $61,750. The Commonwealth responds that because Dimou is guilty of conspiracy, he is responsible for the full restitution amount. We hold Dimou is not due relief.

A claim that the amount of restitution is not supported by the record challenges the legality of the sentence. *Commonwealth v. Veon*, 109 A.3d 754, 772 (Pa. Super.), *appeal granted in part*, 121 A.3d 954 (Pa. 2015). Whether a sentence is illegal is thus a question of law and our standard of review is plenary. *Id.*

In *Commonwealth v. Nypaver*, 69 A.3d 708 (Pa. Super. 2013), the defendant and his wife were each convicted of one count of theft by deception and conspiracy. *Id.* at 710. The defendant was required to pay restitution. *Id.* On appeal, the defendant argued that he was not involved in the theft and therefore the evidence was insufficient to sustain his conviction. *Id.* at 715-16. The *Nypaver* Court rejected that argument, reasoning that because the record supported the defendant's conspiracy conviction, it also supported the theft conviction. *Id.* at 716; *see also Commonwealth v. Mathis*, 464 A.2d 362, 368 (holding, "restitution may be imposed upon a conspirator for the acts of his fellow conspirators done within the course of the conspiracy.").

Instantly, similar to the defendant in *Nypaver*, Dimou has argued that he should not have to pay restitution of $260,000—the amount stolen by Veronikis. *See Nypaver*, 69 A.3d at 710. As noted above, we have held that the record viewed in the Commonwealth's favor support the jury's verdict that Dimou was guilty of conspiracy. Because the record supports

the conspiracy conviction, it follows that the court may order Dimou to pay restitution for the acts of Veronikis. **See Mathis**, 464 A.2d at 368. Accordingly, we discern no error by the trial court. **See Veon**, 109 A.3d at 772.

Next, we examine the issues raised by Paxos:

Is [Paxos] entitled to an arrest of judgment on the charge of receiving stolen property where the evidence is clearly insufficient to sustain the verdict?

Is [Paxos] entitled to an arrest of judgment where the trial court erred when it denied [Paxos's] motion for judgment of acquittal at the conclusion of the Commonwealth's case?

Is [Paxos] entitled to a new trial on the charge of receiving stolen property where the greater weight of the evidence does not support that verdict?

Is [Paxos] entitled to a remand to the sentencing court for a new hearing when the court erred in imposing restitution, erring as a matter of fact and law?

Paxos's Brief at 3 (reordered to facilitate disposition).

We summarize Paxos's arguments in support of her first two issues. Paxos notes that she signed the checks at the request of her mother, Veronikis. She maintains that she did not know the money was stolen and that she did not intentionally receive the stolen money. No criminal behavior, Paxos insists, could be attributed to her. She contends nothing in the record established guilty knowledge. Thus, Paxos concludes the court

- 16 -

erred in not granting her motion for acquittal after the Commonwealth rested and the evidence was insufficient.

The Commonwealth counters that Paxos did not just act as a passive recipient of the stolen money, but was "directly involved in facilitating the deposits and moving the sizable funds of money." Commonwealth's Brief at 13. In the Commonwealth's view, Paxos's failure to inquire about the source of the deposited funds established her guilty knowledge. *Id.* at 14. It points out that at Veronikis's request, Paxos would prepare, sign, and leave a check for her. *Id.* at 15. The Commonwealth notes that it was Paxos who wrote all the checks for Veronikis, although both defendants had authority to write the checks and that it was Paxos who wrote and delivered the check that paid for Veronikis's plastic surgery. The Commonwealth concludes that it was for a jury to evaluate Paxos's actions and infer an intent to conceal stolen funds. *Id.* at 16. We have concluded that Paxos is not entitled to relief.

A sufficiency-of-evidence claim is subject to a *de novo* standard of review. **See Ratsamy**, 934 A.2d at 1235. The standard of review for an arrest of judgment follows:

> When ruling on a motion in arrest of judgment, a trial court is limited to ascertaining the absence or presence of that quantum of evidence necessary to establish the elements of the crime. At this stage in the proceedings, the trial court is limited to rectifying trial errors, and

> cannot make a redetermination of credibility and weight of the evidence. . . .
>
> For purposes of appellate review,
>
> In passing upon such a motion in arrest of judgment, the sufficiency of the evidence must be evaluated upon the entire trial record. All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove.
>
> In order for a trial court to properly grant a criminal defendant's motion in arrest of judgment on the ground of insufficient evidence, it must be determined that accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed the verdict could properly have been based, it would be nonetheless insufficient in law to find beyond a reasonable doubt that the defendant is guilty of the crime charged.

*Commonwealth v. Melechio*, 658 A.2d 1385, 1387 (Pa. Super. 1995) (brackets, internal quotation marks, and citations omitted).

Instantly, we have carefully reviewed the entire record, including the trial transcripts, evidence, and reasonable inferences therefrom, in the Commonwealth's favor. It was for the jury to evaluate Paxos's conduct while possessing and disbursing the funds. *See Newton*, 994 A.2d at 1131-33. It was within the jury's purview to examine the record and conclude Paxos possessed the funds without explanation and believed that the funds were probably stolen. *See* 18 Pa.C.S. § 3925(a); *Newton*, 994 A.2d at

1131-33. Given this cold record, we discern nothing compelling that would permit us to conclude the jury was unreasonable or irrational. **_See Ratsamy_**, 934 A.2d at 1235-36.

For her third issue, Paxos contends that the verdict was against the weight of the evidence for receiving stolen property. She contends that the record does not establish that she knew the funds were obtained illegally. Paxos contends that the record demonstrates nothing unusual about her actions with her mother, Veronikis. She maintains that the jury's verdict was based on speculation and should not stand. We discern no basis for granting relief.

With respect to a weight claim:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnote, and internal quotation marks omitted). "An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted).

In this case, as set forth above, the Commonwealth introduced evidence of Paxos's culpability, including repeatedly signing checks for the illegal funds made out to Veronikis. We cannot conclude that the trial court abused its discretion by denying Paxos's weight challenge and the verdict does not shock our sense of justice. *See Widmer*, 744 A.2d at 751-52; *Serrano*, 61 A.3d at 289.

In support of her last issue, Paxos argues that the court erred by awarding the full restitution amount of $260,000, as she was responsible for only "$94,949.28, plus an additional amount equal to the value of two Social Security checks" made out to the victim. Paxos's Brief at 30. She contends that the amount of restitution exceeds the damage she caused. Paxos concedes that the amount of restitution should be $160,000. *Id.* at 33. In response, the Commonwealth agrees that because Paxos was not convicted of conspiracy, and because she received only $160,000 in her bank account,

the amount of restitution should be $160,000, and not $260,000. Commonwealth's Brief at 8.

A challenge to the amount of restitution is a question of law, as it relates to the legality of the sentence. **See Veon**, 109 A.3d at 772. After careful review of the record, we agree with the parties that because Paxos was not convicted of conspiracy, she is only culpable for $160,000. Because both parties agree on the amount of restitution, **see** Paxos's Brief at 33; Commonwealth's Brief at 8, we need not remand for a new hearing and thus, modify the restitution order to reflect $160,000.[9]

We last turn to the issues raised by Veronikis:[10]

> I. Is [Veronikis] entitled to an Arrest of Judgment on all charges including various Theft charges and Criminal Conspiracy as well as dealing in proceeds of unlawful activities where there is clearly insufficient evidence to sustain the verdict?
>
> II. Is [Veronikis] entitled to a new trial on all charges where the greater weight of the evidence does not support the verdict?
>
> III. Is [Veronikis] entitled to an Arrest of Judgment where the Trial Court erred when it denied [Veronikis's] Motion

---

[9] We do not modify the joint and several restitution order for $260,000 for Dimou and Veronikis.

[10] We note Veronikis's appellate brief did not include a certificate of compliance that the brief is less than 14,000 words per Pa.R.A.P. 2135(d). An informal word count reveals that the brief exceeds 15,000 words. Because the Commonwealth did not object, we decline to find waiver.

for Judgment of Acquittal at the conclusion of the Commonwealth's case?

IV. Should [Veronikis] be remanded to the Sentencing Court for a new hearing on the issue of restitution, because the Court made an error of law in determining the restitution amount?

V. Is [Veronikis] entitled to a remand to the Sentencing Court for a new Sentencing Hearing as the Sentencing Court erred in its legal interpretation of the sentence that was necessary pursuant to 18 Pa. C.S.A. Section 5111?

VI. Is [Veronikis] entitled to a remand to the Sentencing Court for a new Sentencing Hearing where the Sentencing Court abused its discretion in sentencing [Veronikis] by violating Sentencing Norms and by imposing an unduly harsh sentence upon [her]?

VII. Is [Veronikis] entitled to a new trial as the Trial Court erred when it permitted grossly irrelevant evidence, in the form of a letter and other evidence, reflecting the hiring of a "criminal attorney" during the investigation of this case?

VIII. Is [Veronikis] entitled to a new trial as the result of Court error in permitting settlement discussions and offer and compromise to be admitted at trial when that evidence should have been excluded?

Veronikis's Brief at 3.

For her first and third issues, Veronikis contends that the trial court should have granted her motions for arrest of judgment. For dealing in the proceeds of illegal activities, she maintains that the victim lawfully gave her the proceeds at issue. *Id.* at 17. Veronikis insists that the victim, at that time, lawfully gifted the funds to her. *Id.* at 17-18. She denies knowing her actions were illegal. *Id.* at 18. With respect to theft by unlawful taking,

Veronikis similarly asserts that the victim lawfully gave her the funds and thus she lacked intent. *Id.* at 19. Regarding her conviction for receiving stolen property, she argues the funds were never stolen. *Id.* at 22. Similarly, Veronikis challenges the sufficiency of evidence for her theft by deception conviction by insisting the victim voluntarily relinquished the funds and the absence of any deception and the victim's reliance on that deception. *Id.* at 25-26. In response to her conviction for theft by failure to make required disposition of funds received, Veronikis suggests she lacked an intent to steal from the victim. *Id.* at 28. She opines that her conviction was a result of an appearance of impropriety. Lastly, for conspiracy, Veronikis claims the record did not establish an agreement between any of the co-defendants. *Id.* at 32. She points out that Paxos was found not guilty of conspiracy. Veronikis insists that even if she violated the law, it does not follow she conspired with Dimou because he was her then-boyfriend and funds were deposited into his bank account. *Id.* at 33.

As set forth above, the standard of review is *de novo*, and for this Court to grant relief, it must conclude the evidence was insufficient to sustain the defendant's convictions. *See Melechio*, 658 A.2d at 1387. We have carefully reviewed the entire record in the light most favorable to the Commonwealth. *See Ratsamy*, 934 A.2d at 1235-36. As noted above, the jury evaluated all the evidence presented, including her power of attorney,

the checks she had Paxos prepare, and her testimony that the victim gifted the funds. **See, e.g.**, Veronikis's Brief at 17-18. The jury, however, elected to disbelieve her. **See Ratsamy**, 934 A.2d at 1235-36. We have no basis to conclude the jury did not act reasonably and rationally. **See id.**

In support of her second issue, Veronikis contends that all of her convictions were against the weight of the evidence. Veronikis asserts that the power of attorney established that she deferred to the victim's orders disbursing the funds to Veronikis and others. She reasons that because she deferred to the victim, she acted in the victim's best interests, which was in accord with the power of attorney. Veronikis argues that the evidence against her was wholly circumstantial.

As noted above, the standard of review is abuse of discretion. **See Widmer**, 744 A.2d at 751-52. Veronikis testified at length on her own behalf. The trial court viewed the record as a whole and essentially held that there were no facts that should have been given greater weight. **See id.** After careful review of the record, the evidence does not shock our sense of justice and thus we cannot conclude the trial court abused its discretion. **See Serrano**, 61 A.3d at 289.

For her fourth issue, Veronikis contends the court erred in calculating the amount of restitution as $260,000. In her view, the restitution amount exceeds the victim's damages by $94,949.28, plus the unknown total of two

social security checks,[11] and thus is illegal. Veronikis's Brief at 40. Of the $94,949.28, Veronikis contends that $44,949.28[12] was due to taxes and other expenses from the victim's sister's estate,[13] and the remaining $50,000 was for a second mortgage. Veronikis argues that because she never received $94,949.28, she should not be held responsible for repaying that amount.

The Commonwealth counters that because Veronikis was convicted of conspiracy, she is responsible for the full amount of $260,000. The trial court opined that Veronikis failed to provide the court documents evidencing her contention at or after her post-sentence motion hearing. Veronikis Trial Ct. Op., 6/20/14, at 13. We conclude Veronikis has not established entitlement to relief.

The standard of review is *de novo*, as a contention that the restitution amount is not supported by the evidence is a legality-of-sentence issue.

---

[11] Veronikis's counsel offered to provide documentation of that amount after the hearing on her motion for reconsideration of sentence, but the record reflects no post-hearing supplementation. **See** N.T. Veronikis Sentencing Hr'g at 10-11.

[12] Somewhat confusingly, Veronikis's counsel also asserts this figure is $44,949.78. **See** N.T. Veronikis Sentencing Hr'g at 11.

[13] Specifically, according to Veronikis's counsel, the victim's sister bequeathed $5,000 to a third party, and owed $26,506.49 in taxes, $7,800 in estate legal fees, and $5,642.79 for outstanding debts. **See** N.T. Veronikis Sentencing Hr'g at 8-9, 11.

*See Veon*, 109 A.3d at 772.  We agree with the trial court, however, that Veronikis failed to supply the trial court with sufficient documentation supporting her position.  Based on the documentation Veronikis provided to the trial court, we are unable to ascertain how she arrived at her conclusion that the victim's damages were allegedly $94,949.28 less than the restitution amount.  *See, e.g.*, Ex. C-1, Victim's Inheritance Tax Return. Accordingly, this Court is not in a position to conclude the trial court erroneously calculated the restitution amount.  *See Veon*, 109 A.3d at 772.

Next, we address Veronikis's fifth issue.  Veronikis's argument is in reference to her sixteen month to twenty year prison sentence and $520,000 fine for dealing in the proceeds of illegal activities under 18 Pa.C.S. § 5111(b).  She contends that the trial court did not understand the sentencing choices available to it.  Veronikis's Brief at 44.  Accordingly, she contends the sentence was illegal as it did not "impose a total sentence that was fair and just under all of the circumstances."  *Id.*  We hold she is due no relief.

By way of background, at the sentencing hearing, the court imposed sentence as follows:

> The Court: Okay.  On count 1, the sentence is a minimum of 16 months.  She is RRRI eligible.  The RRRI minimum is 12 months and the maximum is 20 years.  And I'm imposing a $520,000 fine on that count.

> \* \* \*

> The Court: . . . So the total sentence is what I indicated before, it's 32 months to 27 years. $520,000 fine on count 1. Now, on count 2, the theft—
>
> [Veronikis's counsel]: You said 25,000?
>
> The Court: $520,000 fine. That's what [the district attorney] had asked for with respect to that special provision. And I think that should apply on this particular count.
>
> No fines on the other counts. Actually, no, I stand corrected. I do intend to give her a $25,000 fine on count 2. And I'm putting that in there in case there's some type of a legal challenge.
>
> If the Superior Court determines that that does not apply, at a minimum she will have a $25,000 fine that will remain. All right. Because I suspect there will be a challenge to that.
>
> [District attorney]: Your Honor, is that on count 2 or 6?
>
> The Court: Count 2. I'm putting a $25,000 fine on— excuse me. A $15,000 fine. My mistake. Thank you for pointing that out to me. She will, at least, have a $15,000 fine on that. $520,000 fine on count 1.

N.T. Veronikis Sentencing Hr'g at 27-28.

"Whether a question implicates the legality of a sentence presents a pure question of law." *Commonwealth v. Taylor*, 104 A.3d 479, 489 (Pa. 2014). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Commonwealth v. Melvin*, 103 A.3d 1, 52 (Pa. Super. 2014) (citation omitted). The relevant sentencing provision follows:

- 27 -

> **(b) Penalty.**—Upon conviction of a violation under subsection (a), a person shall be sentenced to a fine of the greater of $100,000 or twice the value of the property involved in the transaction or to imprisonment for not more than 20 years, **or both**.

18 Pa.C.S. § 5111(b) (emphasis added).

Instantly, the court sentenced Veronikis to a sentence of sixteen months to twenty years' imprisonment and a fine of $520,000, which represents twice the value of the property involved. *See* N.T. Veronikis Sentencing Hr'g at 27. Section 5111(b) permits a court to impose both imprisonment **and** a fine, and the instant trial court elected to impose both. *See* 18 Pa.C.S. § 5111(b); *Melvin*, 103 A.3d at 52. We thus cannot agree with Veronikis's assertion that the sentence was illegal or that the court was somehow unaware of or did not understand the available sentences.

Her sixth issue challenges the discretionary aspects of the sentence. Veronikis contends her sentence was unreasonable as it was manifestly excessive. Specifically, she alleges that the maximum sentence of twenty-seven years' imprisonment is excessive given her prior record score of zero. Veronikis's Brief at 48. Veronikis contends the court gave undue weight to the age of the victim. She claims the amount of restitution was not supported by the record and that the court failed to exercise its discretion

under 18 Pa.C.S. § 5111(b) to impose a fine or imprisonment, or both.[14]  ***Id.***

at 49.  We conclude Veronikis is not entitled to relief.

This Court has stated that

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right.  Prior to reaching the merits of a discretionary sentencing issue:
>
> > [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.

***Commonwealth v. Evans***, 901 A.2d 528, 533-34 (Pa. Super. 2006) (some

citations and punctuation omitted).

> [T]he Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered).  Similarly, the

---

[14] We resolved this specific challenge, ***supra***.

Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm . . . .

**Commonwealth v. Googins**, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** at 727.

Instantly, Veronikis timely appealed, arguably preserved her issue in her post-sentence motion,[15] and included a Pa.R.A.P. 2119(f) statement in her brief. **See Evans**, 901 A.2d at 533. Veronikis's Rule 2119(f) statement complies with **Googins** as she has raised a substantial question by asserting that her sentence was contrary to the fundamental norms underlying the sentencing process. **See Googins**, 748 A.2d at 727. Accordingly, we examine the merits.

This Court has stated,

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

---

[15] As noted above, Veronikis did not specifically argue a zero prior record score or the age of the victim in her post-sentence motion, but did generally contend the sentence was unreasonable.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted).

The level of appellate scrutiny depends on whether the sentence falls within the sentencing guidelines. *Commonwealth v. Bowen*, 975 A.2d 1120, 1124 (Pa. Super. 2009). "[A]n appellate court may not disturb a sentence that is within the sentencing guidelines unless it determines that the sentence is 'clearly unreasonable.'" *Id.* at 1126 n.5 (quoting 42 Pa.C.S. § 9781(c)). For sentences that fall outside of the guidelines, the appellate court may vacate the sentence and remand the case to the sentencing court only if the sentence is "unreasonable." *Id.* at 1123 (quoting 42 Pa.C.S § 9781(c)). However, the guidelines have no binding effect, and do not "predominate over other sentencing factors." *Commonwealth v. Walls*, 926 A.2d 957, 964-65 (Pa. 2007).

In making a reasonableness determination, a court should consider four factors:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d)(1)-(4).

> A sentence may be found unreasonable if it fails to properly account for these four statutory factors. A sentence may also be found unreasonable if the "sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing." These general standards mandate that a sentencing court impose a sentence "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

***Sheller***, 961 A.2d at 191 (citation omitted).

"When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." ***Commonwealth v. Baker***, 72 A.3d 652, 663 (Pa. Super. 2013) (citation omitted), *appeal denied*, 86 A.3d 231 (Pa. 2015). As our Supreme Court explained:

> A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Instantly, Veronikis's maximum sentence falls within the statutory limits and her minimum sentence falls within the sentencing guidelines. The sentencing guidelines recommend a minimum sentence of between nine and sixteen months' imprisonment and the maximum statutory sentence is twenty years for dealing in the proceeds of illegal activity. The trial court indicated it evaluated the presentence investigation report, including the absence of a prior record. N.T. Veronikis Sentencing Hr'g at 2. Thus, we presume the court properly considered and weighed all the relevant factors in sentencing her. *See Devers*, 546 A.2d at 18; *Baker*, 72 A.3d at 663. We discern no basis to disturb the court's sentence and thus affirm Veronikis's judgment of sentence.

Judgment of sentence at dockets 1845 EDA 2014 and 2031 ED 2014 affirmed. We affirm the conviction at docket 2130 EDA 2014, but modify the sentence to reflect a restitution amount of $160,000.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/2016

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   |       No.    616-2012

              vs.                 |

HRISTOS DIMOU,                |

            Defendant        |

### Pa.R.A.P. 1925(a) OPINION

**James T. Anthony, Judge:**

On October 17, 2013, following a jury trial, the defendant was found guilty of Dealing in Proceeds of Unlawful Activities, Theft by Unlawful Taking or Disposition, Receiving Stolen Property, and Criminal Conspiracy. He was found not guilty of Theft by Deception and Theft by Failure to Make Required Disposition of Funds Received. On January 9, 2014, I sentenced the defendant to an aggregate term of imprisonment of 12 months less 1 day to 24 months less 1 day in the Lehigh County Prison, followed by 8 years of probation. Additionally, the defendant was ordered to make restitution to the estate of Queen E. Hersh in the amount of $260,000.00, jointly and severally with co-defendants Penelope Veronikis and Barbara Paxos.

On January 21, 2014, the defendant filed a Motion for Reconsideration of Sentence challenging the restitution amount and asking that it be reduced. A hearing was held on May 19, 2014, following which I issued an order and opinion denying the defendant's motions on June 20, 2014.[1] This appeal followed.

---

[1] Upon motion of the defendant, I granted a 30-day extension for decision on the post-sentence motion. Pa.R.Crim.P. 720(B)(3)(b).

In his statement of matters complained of on appeal, the defendant challenges the sufficiency of the evidence for each of the crimes he was convicted of, as well as challenging the restitution amount. The latter was sufficiently addressed in my opinion dated June 20, 2014, which I incorporate herein.

In regard to the sufficiency of the evidence, the Pennsylvania Supreme Court has held:

> [T]he test in determining if the evidence is sufficient to sustain a criminal conviction is, whether accepting as true all of the evidence of the Commonwealth, and all reasonable inferences arising therefrom, upon which the jury could properly have reached its verdict, was it sufficient in law to prove beyond a reasonable doubt that the appellant was guilty of the crime of which he stands convicted.

*Commonwealth v. Burton*, 301 A.2d 599, 600 (Pa. 1973). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa.Super. 2005). A mere conflict in testimony does not render the evidence insufficient. *Id.*

A person is guilty of Dealing in Proceeds of Unlawful Activities, "if the person conducts a financial transaction…[w]ith knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity and that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity." 18 Pa.C.S.A. § 5111(a)(2). "Unlawful activity" is defined as any activity graded a misdemeanor of the first degree or higher under Federal or State law. *Id.* at (f).

2

A person is guilty of Theft by Unlawful Taking or Disposition "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). A person is guilty of receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

A person is guilty of criminal conspiracy if he (1) intended to commit or aid in the commission of a crime; (2) entered into an agreement with another person or persons to engage in the crime; and (3) he or one of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. See 18 Pa.C.S. § 903; *Commonwealth v. Murphy*, 844 A.2d 1228 (Pa. 2004).

> The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished. Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, *i.e.,* that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." The defendant does not need to commit the overt act; a co-conspirator may commit the overt act.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa.Super. 2002) (citations omitted).

Factors to consider include "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Id.*

Viewing the evidence in the light most favorable to the Commonwealth and considering all reasonable inferences easily drawn therefrom,[2] there was sufficient evidence upon which to convict the defendant of the crimes charged. The relationship

---

[2] My opinion of June 20, 2014, sets forth a summary of the facts presented at trial.

between the defendant and his co-defendants was familial in nature. The defendant was the first to associate with Queen Hersh, through her sister, Ella, a long-time employee of the defendant. Through the defendant, his then fiancé, Defendant Veronikis, and her daughter, Defendant Paxos, became involved in Queen's affairs. Subsequent to this, all three defendants were involved in multiple financial transactions, including cash withdrawals, deposits into various accounts, and transfers between accounts. The defendant's signature can be found on multiple checks involved in this case, and he deposited large sums of money into his personal account over a short period of time. The circumstances surrounding the defendant's involvement in this case, the large sums of money, and the transfers of funds between various bank accounts is evidence that the defendant and co-defendants were trying to conceal their activities, and that they knew that the property was likely unlawfully obtained. The jury was presented with sufficient evidence upon which to find the defendant guilty beyond a reasonable doubt, and his claim is without merit.

Based on the reasons set forth above and in my opinion dated June 20, 2014, it is my belief that the defendant's appeal is without merit, and I respectfully request the Court dismiss the appeal and affirm the judgment of sentence.

August 28, 2014

James T. Anthony, Judge

4

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   |   No.   616-2012

vs.

HRISTOS DIMOU,

      Defendant

\* \* \* \* \* \* \* \* \* \* \*

APPEARANCES:

Charles F. Gallagher, Esquire, Chief Deputy District Attorney
    For the Commonwealth

Joshua E. Karoly, Esquire,
    For the Defendant

\* \* \* \* \* \* \* \* \* \*

## OPINION

**James T. Anthony, Judge:**

On October 17, 2013, following a jury trial, the defendant was found guilty of Dealing in Proceeds of Unlawful Activities, Theft by Unlawful Taking or Disposition, Receiving Stolen Property, and Criminal Conspiracy. I ordered a Pre-Sentence Investigation (PSI), and on January 9, 2014, I sentenced the defendant to an aggregate term of imprisonment of 12 months less 1 day to 24 months less 1 day in the Lehigh County Prison, followed by 8 years of probation. Additionally, the defendant was ordered to make restitution to the estate of Queen E. Hersh in the amount of $260,000.00, jointly and severally with co-defendants Penelope Veronikis and Barbara Paxos.

On January 21, 2014, the defendant filed a Motion for Reconsideration of Sentence challenging the restitution amount and asking that it be reduced. A hearing

1

was held on May 19, 2014, following which I took the motion under advisement. The parties did not submit briefs. This opinion follows.

## Summary of the Facts

In 2006, 88-year-old Queen E. Hersh was living in Emmaus, Lehigh County, Pennsylvania with her 80-year-old sister, Ella H. Crawford. Ella was Queen's caretaker as Queen suffered from various ailments including diabetes, coronary artery disease, high cholesterol, and early Alzheimer's disease. At the time, Ella worked at the Emmaus Diner, which was owned and operated by Hristos "Chris" Dimou. In May of 2006, Ella was diagnosed with Leukemia. Ella told Dimou, that she was concerned about what would happen to Queen, and in response, Dimou promised Ella that he would take care of Queen. Ella died on June 17, 2006, and Dimou subsequently entrusted his then fiancée, Penelope Veronikis, with Queen's care. Barbara Paxos is Veronikis' daughter.

Two days after Ella's death, June 19, 2006, Veronikis contacted an attorney, Ewalde Cook, Esquire, and arranged for Queen to execute a Power of Attorney appointing Veronikis as Queen's agent. Around this same time, Queen contacted Attorney John Zettlemoyer regarding her own will and Ella's will, which Zettlemoyer had previously prepared. Queen was the named executrix of Ella's estate. Attorney Zettlemoyer met with Queen at her home, and Dimou was present. Dimou told Zettlemoyer that Veronikis had the wills and that "things were being taken care of."[1] A second meeting occurred with Queen, Zettlemoyer and Veronikis. According to Zettlemoyer's testimony, Queen did not speak very much at that meeting and Zettlemoyer "suspected that there was something [t]here that [he] didn't understand, and something may be wrong with what was going on, and that [he] was going to

---

[1] Notes of Testimony (N.T.), October 14, 2013, p.36.

2

call...the Area Agency on Aging."[2] Thereafter, Veronikis contacted Attorney Gary Brienza to probate Ella's estate. According to Attorney Brienza, in order to pay estate taxes and other debts, Queen decided to sell her and Ella's vacation home located at Lake in the Clouds, Canadensis, Pike County, Pennsylvania.

Attorney Zettlemoyer subsequently contacted the Lehigh County Area Agency for the Aging to report possible elder exploitation, and a care manager was assigned to the case. After an investigation, the manager concluded there was no exploitation occurring and the case was closed. Around this same time, Queen signed documents naming Veronikis as the beneficiary of her life insurance policy. Ella Crawford was the original beneficiary on the policy.

On October 30, 2006, Veronikis had an initial consultation with a plastic surgeon, Dr. Edward Guarino, in regard to elective plastic surgery she wished to have done. On November 1, 2006, an agreement of sale was prepared by Attorney Brienza for the Lake in the Clouds property. Veronikis signed the document as "POA" for Queen. Settlement on the property occurred on December 4, 2006, and Queen was not present. Veronikis received two checks in the amount of $49,000.00 and $86,000.00 from the sale. Additionally, she received $2,000.00 from the buyers for furniture left in the home. Veronikis deposited $51,000 into a National Penn Bank (NPB) checking account – consisting of the $49,000 check and the $2,000 check – and $86,000 into a NPB money market account. These accounts were in Barbara Paxos's name, but Veronikis had signatory authority on them both. On the very same day, Veronikis returned to Dr. Guarino to set up her surgery. Also on December 4, 2006, Veronikis wrote a $3,000 check to the Emmaus Diner from Ella's estate account. The memo line read "Funeral

---

[2] N.T. October 14, 2013, p.42.

3

luncheon." The check appears to be endorsed by Dimou. The check was subsequently returned for insufficient funds, and a second check was issued, which Dimou deposited into his Lafayette Bank Account.[3]

On December 28, 2006, $34,000 was withdrawn from the NPB money market account and subsequently deposited into Dimou's Lafayette checking account. On January 4, 2007, Dimou wrote checks totaling $39,250.00 to Irene Margetis: $750.00 to repay a loan on behalf of Paxos; $4,500.00 for the purchase of a 1966 Cadillac; $25,000.00 to repay a loan on behalf of Veronikis; and $9,000.00 for a loan he owed to Margetis. In this same timeframe, Queen executed a second will naming Veronikis as executrix.

Over the next few months, approximately $41,000 was electronically transferred from the NPB money market account to the NPB checking account. An additional $10,000 was withdrawn and put in an account for Tom's Bagels, which was owned by Veronikis. The money market account was closed on March 28, 2007, with a final withdraw of $1,258.68. The closing withdrawal slip appeared to be signed by Paxos.

Around the same time, multiple large electronic expenditures were made from the NPB checking account to various companies not associated with Queen Hersh, including American Express, Bank of America, HSBC Card Services, and Brown Daub car dealership. Large payments were made to Lentz Milling, a bakery product distributor, and Avo's, a Mediterranean baking and bread product company. Payments totaling $10,343.00 were made to Sacred Heart Hospital, Dr. Guarino, M.D., and Sacred Heart Anesthesia in relation to Veronikis's plastic surgery. Additionally, multiple debit

---

[3] The second check was for $3,025.00, which included a $25.00 insufficient funds fee from the December 4, 2006, check.

4

and point of sale purchases occurred at gas stations, department stores, drugstores, and restaurants in and around the Lehigh Valley. Multiple checks "to cash" were issued from the account. Some appear to be signed by Veronikis and some appear to be signed by Paxos. On July 20, 2007, the NPB Checking account was closed with a final withdrawal of $3.19. The closing withdrawal slip appears to be signed by Paxos. There was evidence presented that Paxos's signature varied from check to check. Notably, the lead investigator testified that he questioned whether some of the signatures were actually signed by Barbara Paxos.

On September 12, 2007, Queen executed a limited power of attorney giving Veronikis the right to obtain a $50,000.00 mortgage on Queen's home at 627 Greenleaf Street. Veronikis subsequently obtained a home equity loan and deposited $33,293.73 into Queen's Wachovia checking account. Within a week of the deposit, a series of automatic debit payments were made to multiple credit card companies. In addition, Veronikis wrote three checks out on September 26, 2007, to cash in the amounts of $800.00, $13,000.00 and $2,000.00. In total, approximately $31,000.00 was spent from the account in a two week period of time. On September 27, 2007, an account in Queen Hersh's name was opened at Commerce Bank. The following day, an initial cash deposit of $13,000.00 was made. In just under one month, Veronikis withdrew $12,900.00 in cash from this account.

In the Fall of 2007, the only deposits made into Queen's Wachovia account were monthly Social Security checks. Each month, Veronikis made cash withdrawals averaging $1,000.00 within days of the Social Security deposits. The account was subsequently closed in August of 2008.

5

On July 23, 2008, CitiMortgage filed a mortgage foreclosure action against Queen for her Greenleaf Street property. According to the action, monthly payments since December 1, 2007. went unpaid. With the help of her long-time neighbor, Queen contacted Attorney Karl Longenbach who, at Queen's request, prepared a revocation of Veronikis's Power of Attorney and requested Queen's will be released from Attorney Brienza. Attorney Longenbach was also provided with information that certain credit cards in Queen's name were over the limit and unpaid. After meetings with Queen and Veronikis, Attorney Longenbach contacted the Emmaus Police Department and an investigation commenced.

A Grand Jury was subsequently empanelled, and Mr. Dimou testified. During the course of his testimony, Dimou stated he believed all the money he received from Veronikis was money Queen gave to her. He stated the money was payback for loans he gave Veronikis over the course of their relationship, but he could not recall exactly how much he had loaned her. Dimou testified he did not get $3,000.00 for a luncheon because that would be "highway robbery."[4] The defendants were subsequently charged as recommended by the Grand Jury's Presentment.

## Discussion

The defendant request I reconsider the restitution amount imposed at sentencing, alleging it was inaccurate and improperly determined. While some specific dollar amounts were offered at the time of the post-sentence motion hearing, others were not available at that time and have not been subsequently provided to the court. The defendant took issue with the amount of restitution ordered, but failed to provide the

---

[4] N.T., October 15. 2013, p.136.

6

court with the necessary information to make a determination as to whether the amount should be altered. As such, I will not disturb the restitution portion of the sentence.

June 20, 2014

James T. Anthony, Judge